933 So.2d 322 (2006)
Teresa T. DOTTS, Individually and as Mother and Personal Representative of Christopher Brad Holly, Deceased, Appellant
v.
PAT HARRISON WATERWAY DISTRICT, Appellee.
No. 2004-CA-02279-COA.
Court of Appeals of Mississippi.
June 27, 2006.
*324 Donald C. Dornan, James F. Steel, Biloxi, attorneys for appellant.
David L. Martindale, Laurel, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. On August 27, 2002, Teresa Dotts, filed a wrongful death action on behalf of herself and all other wrongful death beneficiaries of Christopher Brad Holly against the Pat Harrison Waterway District (PHWD), under the Mississippi Tort Claims Act (MTCA), seeking monetary damages for the death of her son, Holly. The Lauderdale County Circuit Court held a bench trial on August 3 and 4, 2004. On October 25, 2004, the court found that PHWD was immune from liability under Mississippi Code Annotated Section 11-46-9(1)(d)(g)(v) and (w)(Rev.2002). Aggrieved by the court's findings, Dotts raises two issues on appeal:
1. WHETHER THE DISCRETIONARY PROTECTIONS OF MISSISSIPPI CODE ANNOTATED § 11-46-9(1)(d) WERE PROPERLY APPLIED IN THIS CASE; AND
2. WHETHER THE TRIAL COURT ERRED WHEN IT IGNORED SUBSTANTIAL, CREDIBLE, AND REASONABLE EVIDENCE THAT PARK RANGER RAFORD WILLIAMS KNEW OR SHOULD HAVE KNOWN THAT A DANGEROUS CONDITION EXISTED AT DUNN'S FALLS WATER PARK.
Finding no error in the court's judgment, we affirm.

FACTS
¶ 2. PHWD is an agency of the State of Mississippi, created by Mississippi Code Annotated Section 51-15-101 (Rev.2003). Included in its permissible actions is the organization and maintenance of parks for recreational purposes. PHWD maintains nine parks for recreational purposes. Of those nine parks, eight have swimming areas, which include lakes or open waters. Two of the parks, Flint Creek Water Park and Okatibbee Creek Water Park, have water slides. Only the two parks with water slides employ lifeguards. None of the eight lakes employs lifeguards.
¶ 3. Dunn's Falls Water Park (Dunn's Falls) opened in 1985.[1] The area includes a mill, spillway, and lake created by the flow of the Chunky River. Dunn's Falls is one of the nine parks open to the public for recreation. The facilities include cabins, paddle boats, and a designated swimming area.
¶ 4. On July 2, 2001, Christopher Brad Holly and his family rented a cabin at Dunn's Falls. While swimming across the Dunn's Falls mill pond with his brother and cousins, Holly began to struggle and eventually drowned. Emergency personnel performed CPR, but were unable to revive Holly. Holly was pronounced dead at the Anderson Hospital in Meridian.
¶ 5. On June 25, 1999, PHWD published a policy delineating rules concerning its public swimming areas. In the policy, the Board of Directors recommended that all public swimming areas be maintained at a depth not to exceed four feet. The Board also prescribed buoys and ropes to be used in order to outline this recommended depth. At the time of Holly's drowning, the signs at Dunn's Falls did not state that the public should stay within the buoys. *325 The back buoy line that enclosed the swimming area was also absent. There was also no reach pole, shepherd's hook, ring buoy, or flotation device provided at Dunn's Falls. Because PHWD did not employ lifeguards at Dunn's Falls, and because Raford Williams, the park manager, did not possess lifeguard training, there was no lifeguard on duty the day of the accident. Dotts filed her complaint alleging that the PHWD was liable for Holly's death.
¶ 6. At trial on August 3 and 4, 2004, the trial court considered arguments from PHWD and Dotts. In his memorandum opinion, the trial judge found PHWD immune from liability under Mississippi Code Annotated Section 11-46-9(1)(d)(g)(v) and (w) (Rev.2002), which reads:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
. . . .
(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;
. . . .
(g) Arising out of the exercise of discretion in determining whether or not to seek or provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services;
. . . .
(v) Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care; or
(w) Arising out of the absence, condition, malfunction or removal by third parties of any sign, signal, warning devise, illumination device, guardrail or median barrier, unless the absence, condition, malfunction or removal is not corrected by the governmental entity responsible for its maintenance within a reasonable time after actual or construction notice.
Aggrieved by the trial court's findings, Dotts appeals. Finding no error in the court's decision, we affirm.

DISCUSSION
¶ 7. A circuit court judge sitting without a jury gets the same deference with regards to his findings as a chancellor; his findings are safe on appeal where supported by substantial, credible, and reasonable evidence. Davis v. Latch, 873 So.2d 1059, 1061(¶ 6) (Miss.Ct.App.2004) (citing Maldonado v. Kelly, 768 So.2d 906, 907(¶ 4) (Miss.2000)). The circuit court's findings will not be disturbed unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Id. (citing City of Jackson v. Perry, 764 So.2d 373, 376(¶ 9) (Miss.2000)). Errors of law, however, including the proper application of the MTCA, are reviewed de novo. Fairley v. George County, 800 So.2d 1159, 1162(¶ 6) (Miss.2001).

1. Whether the discretionary protections of Mississippi Code Annotated § 11-49-6(1)(d) were properly applied.
¶ 8. The trial court found that PHWD was immune from liability pursuant *326 to Mississippi Code Annotated Section 11-47-9(1)(d). Because Mississippi has no statutory requirements regarding the operation of swimming facilities, the trial court held that PHWD's actions concerning the operation of Dunn's Falls were a discretionary function. When a governmental actor is required to use his own judgment or discretion in performing a duty, that duty is discretionary. Harris ex. rel Harris v. McCray, 867 So.2d 188, 191(¶ 12) (Miss.2003). If the duty is one that has been positively imposed by law and in a manner or upon conditions which are specifically designated, the duty to perform under those conditions is ministerial. Mosby v. Moore, 716 So.2d 551, 558(¶ 32) (Miss.1998). However, not all discretionary duties enjoy governmental immunity. Only those functions which are by nature policy decisions, whether made at the operational or planning level, are protected. Jones v. Mississippi Dept. of Transp., 744 So.2d 256, 260(¶ 10) (Miss. 1999) (overruled on other grounds) (citing United States v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)).
¶ 9. In determining whether governmental conduct is discretionary so as to afford governmental entity immunity, we employ the two-part public policy function test. Id. at 260(¶ 11). The test requires a determination of (a) whether the activity involves an element of choice or judgment, and if so, then it must be determined (b) whether the choice or judgment involves social, economic, or political policy. Id. at 260(¶ 10) (citing Gaubert, 499 U.S. at 323, 111 S.Ct. 1267).

a. Whether the activity involved an element of choice or judgment
¶ 10. In its memorandum opinion, the trial court found that Mississippi has no statutory requirements regarding the operation of swimming facilities like that of Dunn's Falls. Therefore, the trial court found that PHWD had discretion in making judgments regarding the exercise of its powers and functions in operating Dunn's Falls. Because there are no statutory requirements for the operation of parks such as Dunn's Falls, the trial court's findings were not in error.
¶ 11. In exercising its discretionary function, PHWD adopted a policy on June 25, 1999, delineating rules concerning its public swimming areas, which in pertinent part reads:
(2) Once the swimming area buoys have been adjusted or 4 feet has been confirmed, a reference point from shore of those buoys should be made and known by other staff members as well. This will assist in monitoring the position of the buoys on a day-to-day basis. If it is determined the buoys have been inappropriately moved, efforts should be made as soon as possible to re-establish the 4-foot boundary.
If anyone is caught attempting to relocate the buoy line, please feel free to escort them to the gate. This activity hereafter should be considered extremely serious due to the threat toward the safety of others and the liability it creates for us.
(3) No one will be expected to adjust the buoy line out, as the result of a diminishing recreational pool brought on by periods of drought. It is likely that others will take it upon themselves to adjust the buoys as they see fit. Remember your reference points.
. . . .
(5) The burden of enforcement will likely increase due to smaller swimming areas and the public's desire to swim or float out beyond the buoy line. These areas will become more congested, and your authority will be tested. For those *327 who are seen out beyond the buoy lines, the time to address this matter is then. Repeat offenders can be removed from the swimming area (s) for any length of time as you may see fit, or in some cases, they can be shown the gate as well.
¶ 12. The board also required that each swimming area maintain proper signage: no lifeguards, swim at own risk, stay within buoys, etc.
¶ 13. The park manager of Dunn's Falls at the time of Holly's accident was Raford Williams. He was the only employee on duty that day. Although the trial court found that the PHWD was utilizing a discretionary function, the court held that Williams did not have any discretion regarding the operation of Dunn's Falls. Because of PHWD's policy, Williams' actions were ministerial. Therefore, any evidence of Williams' knowledge that the back buoy line was missing or knowledge that the swimming area's configuration had changed would be violations of the policies of PHWD that would trigger liability under the MTCA.
¶ 14. Williams died in or around February 2003. Since he died before a deposition was taken, the court was not able to determine whether Williams knew that the swimming area had been reconfigured. PHWD offered proof that the ropes and buoys could not be seen from the deck of Williams' station, thus inferring that Williams probably did not have knowledge of the reconfiguration of the swimming area prior to the accident. Dotts offered proof that the buoys and ropes were missing before the children began to swim in the pond, thus inferring that Williams probably did have knowledge of reconfiguration before the accident. The judge found that since Williams was not questioned prior to his death, it could not be determined whether or not he had actual knowledge of the reconfiguration. Since Dotts failed to otherwise prove that Williams did have knowledge of the reconfiguration, it would be unfair to impute that knowledge. Therefore, the court found PHWD was not liable. A judge's findings of fact upon conflicting evidence will not be reversed unless manifestly wrong. Voss v. Stewart, 420 So.2d 761, 765 (Miss.1982). Finding no error, this claim is without merit.

b. Whether the choice or judgment involves social, economic, or political policy
¶ 15. This prong of the discretionary exception test protects only those discretionary actions or decisions based on considerations of public policy. Elder v. United States, 312 F.3d 1172, 1176 (10th Cir. 2002) (citing Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). The purpose is to "prevent judicial `second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. (quoting Berkovitz, 486 U.S. at 536-37, 108 S.Ct. 1954). The pertinent inquiry, then, is whether the decision "implicates the exercise of a policy judgment of a social, economic, or political nature." Id. at 1181 (quoting Duke v. Dep't. of Agric., 131 F.3d 1407, 1411 (10th Cir.1997)).
¶ 16. The court also found that the decisions of PHWD about the enclosure of the swimming area, the signage at the pond, and the provisions concerning lifeguards and lifesaving equipment are all grounded in public policy. After weighing the costs and practicality of these provisions against the value to the public to have such provisions, the trial court found PHWD's decisions to be grounded in public policy. Dotts claims that PHWD should incur liability because it appears that these issues were never discussed before *328 the PHWD board of directors as a policy matter. Application of the public policy prong of the discretionary function test does not require proof of the thought processes of pertinent decisionmakers. Elder, 312 F.3d at 1182. Rather, the focus is on the nature of the actions taken, and whether they are susceptible to policy analysis. Id. Thus, this claim is also without merit. Because the actions of the PHWD were correctly determined to be discretionary, and grounded in social, economic, and political policy, PHWD is immune from liability pursuant to Mississippi Code Annotated Section 11-46-9(d). This issue is without merit.

2. Whether the trial court erred when it ignored substantial, credible, and reasonable evidence that park ranger Raford Williams knew or should have known that a dangerous condition existed at Dunn's Falls Water Park.
¶ 17. Dotts also claims that the trial court erred in determining that PHWD was granted immunity under Mississippi Code Annotated Section 11-46-9(v). Under this statute, PHWD will not be granted immunity if Dotts can prove (1) a dangerous condition, (2) on the governmental entity's property, and (3) which the governmental entity caused by negligence or wrongful conduct, or of which it had actual or constructive notice and adequate time to protect from or warn against, and (4) the condition was not open and obvious. Lowery v. Harrison County Bd. of Supervisors, 891 So.2d 264, 267(¶ 12) (Miss.Ct. App.2004). Dotts claims that Holly's accident was caused by PHWD's negligence or wrongful conduct in not maintaining the swimming area with buoys, and that Williams knew of the missing buoy in enough time to reconfigure the swimming area before Dotts and her family began to swim there.
¶ 18. However, the trial court found that Dotts failed to prove that the missing buoy was the actual cause of Holly's death. Master Sergeant Wilder with the Mississippi Department of Wildlife, Fisheries, and Parks testified that Holly's drowning was caused by swimming in unknown waters and physical failure or exhaustion. Holly's cousin also testified that Holly's distress before his drowning could have been caused by his fear of snakes.
¶ 19. Further, Dotts failed to prove that Williams or PHWD had actual or constructive notice of the missing back buoy. Stone Barefield, the Division Director of Parks, testified that the swimming area was intact a month earlier when he visited Dunn's Falls. Peggy McGinnis, an employee of Dunn's Falls, as early as two days before the accident, was working at Dunn's Falls and did not notice whether the back buoy was in place or not. As stated earlier, Williams was not deposed before his death, so there was no way to prove whether or not he knew of the missing back buoy. Although Dotts did offer testimony that the buoy was missing when her family began to swim in the designated area, she failed to prove that PHWD was aware of the missing buoy. Thus, the trial court did not err in determining that PHWD was immune from liability under Mississippi Code Annotated Section 11-46-9(v). This issue too is without merit. Therefore the judgment of the trial court granting PHWD immune from liability pursuant to the MTCA is affirmed.
¶ 20. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND *329 ISHEE, JJ., CONCUR. SOUTHWICK AND ROBERTS, JJ., NOT PARTICIPATING.
NOTES
[1] Dunn's Falls is owned and operated by PHWD. Dunn's Falls was maintained by Park Ranger Raford Williams, who functioned as park manager.